The next case is 081133, Merck and Company Incorporated v. Apotex Incorporated. Good morning. I'm William Mercozzi on behalf of the Apotex appellants. Apotex now has tentatively approved product that has satisfied all substantive requirements for approval. Apotex satisfied those requirements long ago. I have just received now the formal tentative approval letter from Apotex from the FDA showing that Apotex's product is ready to go. Apotex is ready, willing, and able to launch that product as soon as reasonably possible on October 28th when the pediatric exclusivity for the brand product expires. What do you seek to gain from this suit if you are successful? In other words, what harm do you believe this suit will remedy? The harm, Your Honor, is the inability to market what all parties seem to agree at this point is a non-infringing product on October 28, 2008 when the brand exclusivity expires. Without a declaratory judgment, Apotex will not be able to do that. As a matter of fact, there's no dispute. Without a declaratory judgment, it won't get a product on the market in 2008 at all. The earliest, the very earliest they could get on without a judgment is April to mid-2009, and that's only if we believe Merck that the first filer will launch with certainty on October 28th, and there is no evidence that that will happen. No one knows, certainly not Merck, what the intent of the first filer is. So at a minimum, Apotex is looking at at least a six-month delay in launching. Again, what makes this case even more egregious than the prior cases like Carrico is there is no dispute here. This is a non-infringing product. Merck has told us over and over, Apotex couldn't possibly infringe. They couldn't possibly get sued because these patents have been disclaimed. And yet we sit here, and without a judgment, Apotex will not be able to launch that product. The judgment will give you what? A trigger under the forfeiture provision? Yes, Your Honor. It will be a trigger of the failure-to-market forfeiture provision. So that would be little BB, big AA. That's correct, Your Honor. And Hatch-Waxman parlance, yes. But based on the FDA's current view of this statute, as I understand it, there's already been a triggering event under little BB, big CC. I assume, Your Honor, you're referring to the patented listing request that came in from Merck. Your Honor, we, when I say we, Apotex, to Apotex's knowledge, they are not FDA has declared a forfeiture of any exclusivity. And that's the key here, Your Honor. FDA makes the determination eventually of whether there's been a forfeiture decision or not. We're not aware that they're even aware of the issue at this point, much less declared a forfeiture. The decision that was given to you as supplemental authority or to the court was an entirely different drug product that has nothing to do with this dispute. If Merck is going to tell us that, in fact, they've contacted FDA and FDA said there's been a forfeiture, that would be news to Apotex. We're not aware of that. So we still believe the harm is redressable by this court because even a reasonably prompt decision from this court holding that there's jurisdiction and we would submit that this patent can't possibly be infringed, again, as Apotex argued in its summary judgment motion below, it was unopposed based on the patent disclaimer, that decision from this court would start the 75-day clock ticking in the failure to market forfeiture provision. That would then allow Apotex to launch its product on October 28th or shortly thereafter. Let me ask you this. Under section little bb, it talks about the date that is 75 days after the date as to each of the patents with respect to which the first applicant submitted, etc. Each of the patents. Yes, Judge. And we have three patents involved in the COSOP product, correct? That is correct, Your Honor. Now, one of those patents, there's been an adjudication. In effect, you lost. Well, high-tech lost. We agree to be bound by the result of the high-tech decision. That means that's a loss for Apotex. Correct. It is a loss. And that patent's now gone for exclusivity purposes. It's knocked down. It's irrelevant to the analysis at this point. It's irrelevant to the analysis. Why is it irrelevant to the analysis? That's a patent that's one of the three patents. And there's been an adjudication now that you've infringed that patent. So you can't commence activities before October 28, 2008. That's correct, Your Honor. The date the injunction concludes. So it seems to me even if you get a judgment under paragraph big AA for the other two patents, you can never get a trigger date under AA, BB, or CC for each of the patents because the 413 patent has already been found to be infringed. The easy answer to that, Your Honor, is you only have to knock down the patents to which the first filer is maintaining a paragraph 4 certification. Once you have lost on a patent, FDA regulations require you to change that paragraph 4 to a paragraph 3, meaning you will stay off the market until that patent expires. That's what happens in a patent loss. I see. So that takes it out of the mix. Absolutely, Your Honor. That's what I meant by it's irrelevant, not in the mix. So we go patent by patent. We have the first earliest patent is now gone. They're not maintaining a paragraph 4 to that anymore. No one is, not Apotex either. And if you don't change your 4 to a paragraph 3, FDA deems it changed because you lost your litigation and you can't maintain a paragraph 4 to a patent you lost on. So then we go to the later two patents. But with respect to the first one, does HITECH have an exclusivity period now? No, Your Honor. There's no exclusivity associated with a patent that you've lost on. You only get exclusivity if you maintain paragraph 4s on patents and you don't lose, correct. So now we're just looking at the later two patents that everyone has paragraph 4s on, the first filer and Apotex. Those are the patents that are maintaining eligibility for exclusivity for the first filer. Those are the patents that Apotex needs judgments on to set up a trigger of the failure to market forfeiture provision. If the FDA dealt with this case the way it advised of now, does HITECH still have its exclusivity? If they dealt with the case exactly as they did in, I believe you're referring to the Acarvo situation in FDA administrative decision, it is possible there could be a forfeiture provision. Already? Possible, yes, Your Honor. It is possible there could be. However, I would submit that is an unprecedented authority on anyone, much less this court. And that's the problem we have with the argument that possibly there could be a forfeiture event. What Merck is trying to do is set this court up as some type of super agency to make this determination now, well, there's already been a possible forfeiture, so we don't need to worry about exercising jurisdiction here. We think that misses the point. The point is Apotex clearly has injury in fact here, sufficient to establish an Article III controversy under the court's precedent. Carrico, for example, used the court's own words. If Apotex has a product that it correctly believes doesn't infringe, and here obviously everyone agrees that's the case, it has a right, a repeat right, the court said, to go to market. And its exclusion from that generic market is an injury in fact. And just because there may be floating out there in the ether, some other possible forfeiture event does not diminish the fact of that injury. But isn't this case different from Carrico based on the fact that you've already been held to infringe the 413 patent? Your Honor, we think that's an interesting distinction without a difference. That is, the injury in fact in Carrico, and in all the cases for which there are covenants, and now we're going to start to see disclaimer cases, it's the inability to market that admittedly non-infringing product for any amount of time, whether that's before the earlier patent expires or after the later patent expires. And we don't believe Carrico was so narrowly based on that. I know everyone keeps pointing to this footnote in Carrico. The fact of the matter is in the Carrico decision, the court did focus on the fact that absent a judgment, the filer would be left off at a minimum, excuse me, the subsequent filer would be delayed at a minimum 181 days after that earlier patent expires. That's injury in fact. And we submit that it doesn't matter where that delay happens, whether it's delayed before the earlier patent expires or delayed later. The fact of the matter is that in Carrico, and more egregiously here, you have a non-infringing product that will be delayed. And we don't think there's any threshold delay that is okay and somehow diminishes that injury. Meaning whether Apotex is delayed for six months after October 28th or one day, the fact of the matter is it has an admittedly non-infringing product that it has a right to market. Can you tell me what you mean by admittedly non-infringing product? Yes. Merck, we can distinguish this between the Carrico case and this case because Merck has said it makes all the difference that there's a covenant there and a disclaimer here. We agree they're different. We think this case is worse because in a covenant case, maybe reasonable minds could differ about the enforceability or the breadth or the expansiveness of the covenant. But in the disclaimer case, according to Merck's own admissions, you don't have any of that dispute. According to Merck, this patent is unenforceable. It can't be sued or enforced against anyone. No one can infringe this patent. That is undisputed. That is conceded in this record. But you do infringe the other patent. The earlier patent, yes, Your Honor. That's the same patent that Hitech infringed, which is why no generic is eligible for approval until October 28th when the earlier brand exclusivity expires. But the fact of the matter is that- They're not an admittedly un-infringing product until at least after then, correct? Well, the earlier patent has expired, Your Honor. Well, but they've got the extension. We're in the brand exclusivity period. No one's infringing any patent at this point. The brand patent, the earlier one, naturally expired. We're in the pediatric exclusivity period. When I say admittedly non-infringing, I mean Merck agrees that no one can infringe the two disclaimed patents that are at issue in this declaratory judgment action, which to us makes it all the more egregious. Because why would Congress- I mean, let's think about why would Congress seriously intend that it's okay to use the declaratory judgment mechanism to trigger a forfeiture event for a patent that's at issue and that can't be enforced. But somehow Congress would okay setting up a barrier to generic entry based on disclaimed patents that remain in the Orange Book that can never be infringed. Because that defies logic. To use the system to set up a barrier to generic entry based on patents that no one could ever infringe could not possibly have been intended by Congress or foster the purpose of this bill. If you look at the legislative history cited throughout the briefs in this case discussed at length in Caracol and Novartis, Congress saw this very situation. Congress knew that subsequent filers would be held up by first filer exclusivity and that brand companies would in fact choose not to sue. They wouldn't sue because strategically by doing so they could avoid a court decision that would trigger this whole failure to market event and clear up the generic bottleneck. The brands knew that. Congress purposely enacted this declaratory judgment provision to prevent that because Congress knew subsequent filing generics had to get a judgment on every Orange Book listing patent to clear up this independent barrier for approval. And a disclaimer of patents does not affect that because it's the point that the patents remain in the Orange Book. As long as they're in the Orange Book, a generic has to address them, a generic has to knock them down, or it can't get to market at the earliest possible time. So we think this falls squarely in the purpose intent of the statute and that the patents have been disclaimed is completely irrelevant in the Hatch-Waxman scheme. If you get a judgment of non-infringement or invalidity on the two patents in question, what does that do to the date you can commence sales? What it does, Your Honor, is the date that decision comes down, the 75-day period for the first filer to market starts ticking. If the first filer doesn't hit the market before that 75 days are up, exclusivity is gone, completely forfeited. But that same scenario will occur on October 28, 2008, assuming HITECH begins marketing on that date. It's a little different, Your Honor. In the one scenario, the 75-day clock, if they fail to market in that 75 days, the exclusivity completely disappears and forfeits. On October 28, if it's not forfeited before then, it will be triggered and it will start ticking. And then APOTEX will have to wait the 180 days. So a prompt judgment from this court or decision from this court is necessary to start the 75-day forfeiture clock ticking. Or else APOTEX, on October 28, if the first filer launches, APOTEX could get stuck waiting out that 180 days. And again, we would submit that's something Congress would not have envisioned,  You say a prompt decision. It will only make a difference if you get a judgment before October 28, 2008. Yes, Your Honor. We would need a prompt decision. And that's a very prompt decision. Well, wouldn't it have to be 75 days before that date? Yes. Yes, Your Honor. Which was a week or two back, right? Which no, it would have to be within the next couple weeks. It's according to my calculation, it's next Thursday.  Because there's no need for a remand here. Murk has suggested this has to go back to the district court for her to decide whether she wants to decline jurisdiction. That's not an issue anymore. Under Hatch-Waxman, district courts don't have that discretion. In ordinary declaratory judgment actions, they might still. But in Hatch-Waxman, as this court has acknowledged, Congress directed and mandated the federal courts to hear jurisdiction to the maximum extent allowed by the Constitution. If there's an Article III controversy, district courts don't have discretion anymore to turn away these Hatch-Waxman declaratory judgment actions because Congress said they're critical to opening up the market. So we would suggest this court could enter its own order saying there's jurisdiction, that these patents couldn't be infringed, that would start the 75-day period. All right. Thank you. Thank you. Mr. Beckholz. He used up his rebuttal time, which we're going to give back to him. So you can have a few minutes extra if you need it. Thank you, Your Honor. May it please the Court. One of the basic points that's been overlooked here is the patents don't exist anymore. For a district court to have jurisdiction to issue a decision, a substantive decision on the merits over a patent, the patent must exist. If the patent doesn't exist, there is no subject matter on which the district court can adjudicate. And that is the case here. These patents don't exist. If I can offer an analogy, if the patents had expired and Apotex came to the court and said, I would like a judgment from the court that we don't infringe because the patents have expired, that would clearly be outside the subject matter jurisdiction of the court because once the patents no longer exist, the court no longer has jurisdiction over them. That would be true, certainly, if this was just a patent infringement case. But of course, there is the question of whether the listing of the patents in the Orange Book set in motion a set of circumstances that resulted in harm that can be addressed in some way, then perhaps there's a case or controversy. It was the sort of thing that was discussed and referenced in Carrico. Carrico case. So I'm not saying one way or the other how this should be decided, but I'm saying it's not as simple as simply what would transpire in a normal patent infringement case. With respect, Your Honor, I think that makes no difference. When the patents don't exist, they don't exist. Now in the Carrico case, the patents still did exist. There was jurisdiction for the district court to issue a decision of non-infringement, which would have been based on the covenant not to sue. No question that the patents still existed. No question that the court could have jurisdiction over those patents. The only question was whether the covenant ousted the jurisdiction. Recalling that the covenant was given after the declaratory action was filed, so there was a live controversy before the court. And the question was, did the covenant not to sue moot that controversy? But the patents still did exist. And in Carrico also, we were looking at a five-year delay, a five-year period within which generic competition would have been precluded. And the court made very clear, not only in footnote 14, but at page 11 of the slip opinion, page 29 of the slip opinion, the harm was not that there was an exclusivity under the other patents, but that Carrico was effectively being prevented from challenging the basic patent. The court said that at least three different times, that the harm here, and as a matter of fact, the majority opinion criticized the dissent and said the dissent doesn't seem to understand. What we're talking about here is that Carrico is being precluded before the basic patent expires. Well, of course, as your honors have pointed out, Apotex had its shot at the basic patent here, elected to stand or fall with HITECH, and fell with HITECH. So yes, what Apotex calls Merck's monopoly on Dorzolomit products extends till October 28, because that's a lawful monopoly. Merck has a patent, and it was held valid. Beyond October 28, Merck has no monopoly over Dorzolomit products. It disclaimed the patents that would have protected the combination products out to Now, it seems to me if the question is not the patents exist, because they don't, does the FDA orange book listing exist, and should it exist, that is not an issue to be addressed to this court or to the district court in New Jersey. That's an issue with the FDA. And as your honors pointed out, the FDA has ruled in a parallel case, in the Corbo's case, that the request to delist patents that have been disclaimed is a BB trigger. Apotex, to our knowledge, has never gone to the FDA and said, well, just like Precos, we have a BB trigger here. So that's a remedy that if Apotex has any remedy at all, it's with the FDA. Now, beyond October 28, it's correct that right now, HITECH has a possibility of 180 days of exclusivity. To our knowledge, the FDA has not told HITECH that it has that right, and it has not told Apotex, maybe Mr. Precosi knows differently, it has not told Apotex that it's not going to get approved on October 28. But if HITECH has that exclusivity, that's not gaming the system, that's not an abuse of the system. That is the remedy that Hatch-Waxman provided for first filers. And there's no five-year delay here. I mean, all that Apotex wants is jump in at the same time that HITECH does. It talks about HITECH having an improper head start. There's nothing improper about HITECH's head start. It was more diligent than Apotex was. There's no reason, no abuse here, no reason to destroy any exclusivity because there's been no abuse. But again, I come back to the fundamental question, how can a court say, we will make a substantive determination on a patent that doesn't exist anymore? I also like to follow up on one of the questions that one of your honors asked, which, what is going to be the effect of a decision here? First, I would submit that this court cannot give a substantive determination on the question of infringement. As a matter of fact, if you choose to treat the patents as though they still exist, even if they don't, well, if they still exist, then they did infringe because they do exactly what the claims cover. So I think that's rather a circular argument. To reach the determination they don't infringe, you have to first say the patents don't exist, and that's defeating of jurisdiction. But even under this court's rules, if I'm wrong on everything I've said, and you choose to issue a decision under the court's rules, the mandate will not issue until the 75-day clock has already passed. Your honor is correct. The 75 days from October 28th is, I believe, August 14th. And I wonder if it's 75 days before October 28th, or 75 days before October 11th, which is the AA date. The AA date is April 11th plus the six-month pediatric extension. I think it's August, I think October 28th is the end of the pediatric exquisite. Then the 75-day prior is August 14th. The point is, if there were a decision, all that high tech would have to do to moot the decision totally is start marketing on October 28th. It has its FDA approval. It fought with us all the way up to this court to get the right to sell the products. It's going to start marketing when it has the right to do it, in which case, any decision this court renders is going to be mooted at that point, if I was wrong in everything else that I said. So we've said that there are many reasons why the court lacks subject matter jurisdiction. One is that the patents don't exist anymore. Second is that Apotex has not suffered any injury in fact. Unlike the Carrico case, they're not being delayed indeterminately, indefinitely. Unlike the Carrico case, they weren't precluded from litigating the first patent. Unlike the Carrico case, there's nothing wrong. Nobody gamed the system. Nobody did something to Apotex after it had already certified. These disclaimers were filed long before Merck ever knew that Apotex had filed an ANDA. As a matter of fact, we suspect because Apotex waited six months between the time it filed the ANDA and the time it gave notice that they didn't challenge the patents until they knew they'd already been disclaimed. And Apotex walked into this knowing there was a prior filer, knowing it was subject to that right of exclusivity, and now comes here and complains that as a result of what it did, it is subject to the requirements of the Hatch-Waxman Act. Well, that's not an injury in fact. We did have the point that they didn't have tentative approval. Mr. Riccosi now says they do. I have no reason to doubt what he says. But again, you have to consider whether there is an effective remedy here. And as I said before, even if everything I said is wrong, there is no effective remedy because it's all going to be mooted on October 28, as this court said in Merck versus Apotex a few weeks ago. Because by that time, the 180-day clock will have started to run because Hitech's going to be on the market. So are you saying there is no way that this court could act, assuming it acted immediately, to prevent the commencement of the protected period on October 28? This court would have to issue a final decision on the merits, which is not before it. The question of summary judgment of infringement is not before this court. The only issue before this court is whether Judge Mary Cooper should have taken jurisdiction of the case. The resolution of that issue, if in favor of Apotex, will be a remand to Judge Cooper. Judge Cooper then has discretion to decide whether she will accept that jurisdiction. I respectfully suggest it would be an usurpation of that authority for this court to say, you don't have any discretion in this matter. And no matter how you run out the clock, the 75 days can't start in time to make Hitech forfeit before October 28, 2008. And there is another issue, and one which the court may not have to get to in this case, but it's an issue that Judge Lynn raised. Hitech has only precluded from exercising its exclusivity because of the patent on which it lost, plus the pediatric exclusivity. One legitimate question is, can a generic be subject to forfeiture when in fact it's precluded from marketing anyway by some other event? And a second issue is that under the best pharmaceuticals for pediatrics statute, there's a provision that says if a generic loses any portion of its exclusivity due to pediatric exclusivity, that gets restored. So in fact, this case may be moot for an entirely other reason, that any decision that came down now, even if it happened before the 75 days, would simply say, well, you can't market because you're in the pediatric period, but the pediatric statute says, but we restore that at the end. So for another reason, this may all be moot. Thank you very much. Thank you. Any further questions? Thank you, Judge. Very brief. First off, to say that the patents doesn't exist, again, misses the point here. They remain in the Orange Book, and there's no difference between a disclaimer and a covenant as far as the practical effect. Neither can be asserted, but both remain in the Orange Book and create a barrier to economic entry. Secondly, on the remedy here, there's nothing to remand for. If the patents are truly disclaimed, as Merck says, and we have no reason to doubt they are, the statutory disclaimers are in the record, there is no sense to send this case back to Judge Mary Cooper for her to make that determination. This court can do that. Not only that, this court wouldn't be directing Judge Cooper not to exercise jurisdiction to keep the case. Congress has already said that. Congress has said, if there's an Article III controversy, that's it. The federal courts must exercise the jurisdiction. If the FDA delisted these two patents, would that give you the BB date you're looking for? If they actually took them out of the Orange Book, Your Honor? Yes. Yes, that would, Your Honor. Have you asked them to do that? Apotex has not, to my knowledge, asked FDA to take the patents out of the Orange Book. Any reason why you haven't asked for that? Because Merck has repeatedly asked and FDA has refused. And Merck knows better than most why FDA does. Merck once took patents out of the Orange Book for a drug called Simvastatin. FDA was repeatedly sued by the generics in that case, and the DC Circuit Court of Appeals held FDA may not take patents out of the Orange Book when there could be exclusivities at stake. So when Merck respectfully disclaimed and delisted these patents, Merck was well aware they would never come out of the Orange Book. It's a black letter while they can't. FDA doesn't take patents out of the Orange Book. So once they go in, that starts this course of events from which there's no return unless Apotex can get its declaratory judgment, which is why to say the patents don't exist is not an answer to anything, because they're in the Orange Book and they have to be addressed. As far as gaming the system here, the ultimate gaming of the system, in our view, is using disclaimed patents that can't be infringed to hold the generic off the market. As Judge Mayer is aware from a couple other Apotex cases involving unsolicited covenants not to sue, those used to be the flavor of the month for bottlenecking subsequent filing generics. Give them a covenant not to sue, try to take away the court's jurisdiction. That's happened in at least a half dozen cases to Apotex. There's at least a dozen or more patents in the Orange Book that are subject of covenants not to sue. Make no mistake, the Orange Book is also full of disclaimed patents, disclaimed patents like in this case where a first filer is claiming exclusivity on a patent that can't be infringed because it's been disclaimed. If this court lets this district court decision go undisturbed, it'll be condoning the next loophole used by the brand companies to take away jurisdiction of the subsequent filing generic, and we submit that's the gaming of the system that'll happen here. Brands already did it with the covenants, and if you give them this loophole, they'll take that as well because there's nothing to lose for a brand company. Disclaim an admittedly weak and invalid patent knowing that the subsequent filing generic will be stuck by that patent unless they can get a declaratory judgment. If the court holds the disclaimer somehow, take it out of the court's jurisdiction, we'll have the whole covenant mess again, and CARICO won't have solved any of the problems we're dealing with here. So Apotex can get its harm addressed here. A court decision from this court, irrespective of the mandate, the decision of this court can start that 75-day clock ticking and allow Apotex to launch on October 28th. Thank you. Thank you. Thank you. Case is submitted. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock a.m.